UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 3 1 2014 ★

**BROOKLYN OFFICE**

--------------------------------------------------------------------x

ANTHONY NZEGWU,

               Plaintiff,

   - against -

SECRET SERVICE AGENT ERIC FRIEDMAN,
in his individual capacity, THE CITY OF NEW
YORK, NEW YORK CITY POLICE
DEPARTMENT, DET. JOHN JACKSON,
POLICE OFFICERS "JOHN DOES" #1 through
#10, is meant to be police officers employed by the
New York City Police Department whose names
and badge numbers are Unknown, in their individual
and official capacities,

               Defendants.

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
10-CV-02994 (CBA) (RML)

--------------------------------------------------------------------x

AMON, Chief United States District Judge.

On June 29, 2010, plaintiff Anthony Nzegwu initiated this action against the above-

captioned defendants, asserting a variety of constitutional violations pursuant to 42 U.S.C. §

1983 and Bivens v. Six Unknown Named Fed. Narc. Agents, 403 U.S. 388 (1971), as well as

related New York state law and common law torts. He alleges principally that he was unlawfully

arrested, detained and prosecuted for conducting fraudulent wire transfers of approximately

$150,000. Currently before the Court are defendants' motions to dismiss or, in the alternative,

for summary judgment. Specifically, Defendants City of New York ("City"), New York City

Police Department ("NYPD") and former NYPD Detective John Jackson (collectively, the "City

Defendants") seek the dismissal of or, alternatively, summary judgment on Nzegwu's federal and

state claims of false arrest, malicious prosecution, and unlawful search against Jackson, and

1

municipal liability and <u>respondeat superior</u> liability against the City.[1]  Federal Defendant Secret Service Agent Eric Friedman seeks the dismissal of or, alternatively, summary judgment on Nzegwu's <u>Bivens</u> claims of false arrest, malicious prosecution and excessive detention.[2] Nzegwu argues that these motions should be denied as premature or, in the alternative, held in abeyance pending further discovery, and also seeks leave to further amend his complaint.  For the reasons stated below, the Court finds defendants entitled to qualified immunity on all claims except the unlawful search claim against Jackson, which this Court disposes of on the merits, and the municipal liability claim, which this Court disposes of on the pleadings.  The Court grants defendants' motions in their entirety and correspondingly denies Nzegwu's request to deny or stay resolution of the motions pending further discovery.  The Court also denies Nzegwu's motion to amend the complaint.

## BACKGROUND

### I.  Factual Background

This case arises from the arrest, search, and subsequent detention of Anthony Nzegwu following an allegedly deficient investigation into a bank fraud by Secret Service Agent Eric Friedman.  For purposes of this motion, the Court resolves all conflicts in the evidence and draws all reasonable inferences in favor of Nzegwu.  The facts are as follows:

Beginning in 2008, Angela Strong, a Bethpage Federal Credit Union ("BPFCU") fraud analyst, provided information to Secret Service agents, including Friedman, regarding fraudulent

---

[1] The City Defendants also seek dismissal of Nzegwu's claims for assault and battery and intentional infliction of emotional distress.  Nzegwu, however, stated in his opposition brief that these claims "are . . . withdrawn and will no longer be pursued." (Pl. City Opp. at 2.)  Accordingly, these claims are also dismissed.

[2] Nzegwu arguably alleged a <u>Bivens</u> claim for unreasonable search and seizure.  (TAC ¶¶ 97-101.)  However, Friedman moved for summary judgment as to all Fourth Amendment claims arguing that the claims listed above were the only <u>Bivens</u> claims Nzegwu alleged. (Def. Friedman Mem. at 2-3.)  Nzegwu failed to raise any arguments in support of an unreasonable search and seizure claim against Friedman. To the extent that claim was alleged, it is deemed abandoned.  <u>See Taylor v. City of New York</u>, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

activity connected to the account of BPFCU customer Rui Zhong Zhou.[3] (Friedman R. 56.1 ¶ 54.) Strong advised the agents that, unbeknownst to Zhou, someone had called BPFCU in October 2008, attempting to change the address on Zhou's account from his Queens address to 209 Utica Avenue, Brooklyn, New York 11213 and, thereafter, had attempted to have pre-printed checks for that account sent to the new address. (Id. ¶¶ 55, 56.) Strong also reported that on December 16, 2008, someone had engaged in a series of three closely timed on-line transfers of almost $150,000 from Zhou's account to that of a "David Collins," using IP address 69.114.189.48, and that another IP address, 69.114.188.59, had been used in committing fraud on other accounts. (Id. ¶ 57.) She added that BPFCU's investigation had concluded that these transfers were fraudulent and the transfers were accordingly reversed. (Id. ¶¶ 57-59.) Zhou independently reported this fraudulent activity to the NYPD and Jackson, who interviewed Zhou and wrote a report which he sent to the NYPD's identity theft task force. (Id. ¶¶ 60, 121; Soloveichik Decl., Ex. C.)

In or around February 2009, Meryl Wein, Vice President of Corporate Fraud Investigative Services for Wachovia Bank, informed Friedman and Secret Service Agent Michael Boulden that an account had been fraudulently opened at the end of November 2008 in the name of Rui Zhong Zhou. (Friedman R. 56.1 ¶ 61; Soloveichik Decl., Ex. U, Wein Decl.) Wein reported that money had been moving into and out of that account through ATM transactions at a Wachovia ATM in Manhattan, and online primarily using the IP address 69.114.189.48, but also the IP addresses 69.114.188.59 and 69.114.177.184. (Friedman R. 56.1

---

[3] In his response to Friedman's Local Rule 56.1 statement of undisputed facts, Nzegwu states that he is "presently not in a position to admit or deny" various assertions contained in Friedman's Rule 56.1 Statement because "he has not had an opportunity to test them given the limited discovery allowed so far in this matter." (See, e.g., Pl.'s Friedman R 56.1 ¶¶ 7-11, 13-27, 54-59, 61-88, 87-96.) Plaintiff's statements "fail to create a genuine issue of material fact" and the facts that are not explicitly denied will be treated as undisputed. See Guglielmo v. Marchon Eyewear, Inc., No. 02-cv-5434, 2006 WL 398617, at * 8-9 (E.D.N.Y. Feb. 16, 2006) (citing Aztar Corp. v. NY Entertainment, LLC, 15 F. Supp. 2d 252, 254 n.1 (E.D.N.Y. 1998)).

¶¶ 61, 63, 68-69.) Wein further advised the agents that Wachovia had concluded, based on its own investigation, that Zhou had not opened the account, transferred money into or out of it, and did not live at the 209 Utica Avenue, Brooklyn address associated with the account. (Id. ¶ 62.) Wein also provided the agents with surveillance photographs taken during the relevant transactions at the Wachovia ATM. (Id. ¶ 66.) After reviewing the photographs and bank records, Friedman and Boulden concluded that all the ATM photographs depicted the same individual, and that the depicted individual was involved in the fraud on the Wachovia account. (Id. ¶ 67.)

Taking the lead on investigating this fraudulent activity, Friedman confirmed with Zhou that he had no real accounts at Wachovia, had not authorized the Wachovia account in his name, had not made any of the deposits into or withdrawals from that account, did not live at the 209 Utica Avenue, Brooklyn address associated with both the Wachovia account and the unauthorized address change to his BPFCU account, was not familiar with the person in the Wachovia ATM photographs, and did not recognize the IP addresses that Wachovia and BPFCU had identified. (Id. ¶¶ 70-71.)

On or about February 25, 2009, Friedman, along with United States Postal Inspection Service Agent Eric Sheen, conducted a site visit of 209 Utica Avenue, Brooklyn. (Id. ¶¶ 73-74.) They confirmed that no one named Rui Zhong Zhou, Ruizhoung Zhou, or Zhou lived at that address, that mail addressed to Zhou had been arriving there, and that the community mailbox contained a number of Wachovia mailings to Zhou. (Id. ¶ 77.)

Shortly thereafter, in or about March 2009, Friedman subpoenaed Optimum Online, the Internet Service Provider ("ISP") identified with the three IP addresses connected to the fraudulent activity associated with the Wachovia and BPFCU accounts, to obtain information

4

about these IP addresses. (Id. ¶ 79.) The subpoenaed records revealed that for the relevant period of the fraud the IP addresses were assigned to three Brooklyn addresses: 1444 Park Place, Apartment E7, 1444 Park Place, Apartment F8, and 1481 Sterling Place, Apartment 2. (Id. ¶¶ 82-83.)

On April 10, 2009, Friedman and Boulden visited these Brooklyn addresses, which were located in two buildings back to back on the same block. (Id. ¶¶ 87, 88.) The agents confirmed, using a wireless hunter,[4] that in all three locations there was a strong and unsecured wireless signal. (Id. ¶¶ 91-93.) After knocking on the doors of Apartments E7 and F8 at 1444 Park Place, the agents concluded that the tenants who opened the doors did not match the appearance of the person depicted in the Wachovia ATM photographs, and preliminarily determined that no one else living in those apartments did either. (Id. ¶ 94.) The agents decided to show the ATM photographs to the building's superintendent, Alves Griffiths, who also lived in the building and asked him if he recognized the individual depicted therein. (Id. ¶ 98.) Although the parties dispute the certainty with which Griffiths made the identification, under both accounts Griffiths stated that he thought the individual in the photographs looked like the man residing in Apartment E5 of 1444 Park Place.[5] (Id. ¶ 99; Pl.'s Friedman R. 56.1 ¶ 99; Soloveichik Decl., Ex. X, Griffith Decl. ¶¶ 3-4.)

Friedman and Boulden subsequently knocked on the door of Apartment E5. (Friedman R. 56.1 ¶ 100.) Friedman told the man answering the door that he and Boulden were NYPD officers investigating a domestic dispute reported to have occurred in the building. (Id. ¶¶ 100-

---

[4] A wireless hunter is a wireless, hand-held device that looks for wireless signals sufficiently strong to be accessible in its vicinity, and reflects not only the relative strength of those signals, but also whether those signals are secured or unsecured. (Friedman R. 56.1 ¶ 51.)

[5] Plaintiff hired a private investigator to call Griffiths. That investigator recorded and provided a transcript of his conversation with Griffiths. (Maduegbuna Decl. Ex. 6.) To the extent that plaintiff relies on these sources for the truth of the matter asserted, they constitute inadmissible hearsay. The Court notes, however, that even if it considers plaintiff's version, Griffiths still identified plaintiff as the individual in the ATM Wachovia photograph.

5

01; Pl.'s Friedman R. 56.1 ¶¶ 100-01.) Although the man had no information to give, Friedman asked him to identify himself for record-keeping purposes. In response, the man stated that his name was Anthony Nzegwu and provided a driver's license to confirm his identity. (Friedman R. 56.1 ¶ 102; Pl.'s Friedman R. 56.1 ¶ 102.) Friedman noted the man's name, license number and other details from the license, information he later used to obtain a copy of Nzegwu's DMV photograph for the case file. (Friedman R. 56.1 ¶¶ 103, 107; Soloveichik Decl., Ex. Y, Friedman Decl., ¶ 12; Soloveichik Decl., Ex. 1, DMV Photograph.) Based on their personal observations of Nzegwu, both agents independently concluded that Nzegwu's appearance matched that of the individual in the ATM photographs. (Friedman R. 56.1 ¶ 104.) The agents also confirmed that wireless signals from the three IP addresses connected to the fraud were strong and unsecured in the vicinity of Nzegwu's apartment. (Id. ¶¶ 110-13.) The agents then returned to 1481 Sterling Place and confirmed that the subscriber to the IP address associated with the 1481 Sterling Place address did not match the appearance of the person depicted in the ATM photographs. Nor did a preliminary investigation indicate that anyone else at that residence resembled the person in the ATM photograph. (Id. ¶ 106.)

Believing that probable cause to arrest Nzegwu existed, the agents brought the case to the United States Attorney's Office for the Eastern District of New York, which declined to prosecute the case because the prosecutorial monetary loss threshold was not met. (Id. ¶¶ 116-17.) Nevertheless, according to Friedman, the District Attorney's Office indicated an interest in prosecuting the case, and Friedman accordingly communicated to NYPD Detective Jackson the information he had learned from his investigation. (Id. ¶¶ 119-20; City R. 56.1 ¶ 10.)

Shortly thereafter, on May 14, 2009, Jackson, Friedman, and other NYPD officers traveled to 1444 Park Place, Apartment E5, and, after Nzegwu opened his door, the police

officers placed Nzegwu in handcuffs. (Friedman R. 56.1 ¶¶ 123-24, 128; City R. 56.1 ¶ 14.) During this incident, Nzegwu executed a written consent for the police to search his apartment and any electronic equipment seized. (Friedman R. 56.1 ¶ 132; Maduegbuna Decl., Ex. 2, Nzegwu Decl. ¶ 17.)[6] While the officers were inside the apartment a black officer looked at a picture of Nzegwu and his wife and asked, "Who is that." When Nzegwu responded "That's me," the officer looked at the picture and then back at Nzegwu. (Maduegbuna Decl., Ex. 2, Nzegwu Decl. ¶ 18; Ex. 7, Nzegwu Dep. at 25-28.) The officer then suggested that Nzegwu take his MetroCard with him to the precinct, but Friedman stated that he would provide Nzegwu with a MetroCard at the precinct to return home. (Maduegbuna Decl., Ex. 2, Nzegwu Decl. ¶ 18; Ex. 7, Nzegwu Dep. at 26.) Jackson subsequently transported Nzegwu to an NYPD precinct in Queens where he completed the paperwork related to Nzegwu's arrest. (Friedman R. 56.1 ¶¶ 123-24, 127-28; City R. 56.1 ¶ 14.) Following his arrest, Nzegwu repeatedly protested his innocence. (Maduegbuna Decl., Ex. 2, Nzegwu Decl. ¶ 20.) According to Nzegwu, Friedman laughed at Nzegwu's protestations of innocence, allegedly responding "it doesn't matter [if you never stole anything], we have caught you, you are black and you are Nigerian and all of you are thieves." (Id.)

Meanwhile, Sheen and other NYPD officers continued to execute a search warrant signed the previous afternoon by Judge Gene Lopez of the Criminal Court, which authorized the search of Apartment E5. (Friedman R. 56.1 ¶ 129; City R. 56.1 ¶ 13.) The search warrant affidavit had been sworn out by Friedman. (Soloveichik Decl., Ex. N, Search Warrant Affidavit.) Among the electronic evidence seized were a Dell computer, a thumb drive, and a cellphone. (Friedman R. 56.1 ¶ 133; Pl.'s Friedman R. 56.1 ¶ 133.)

---

[6] Although Nzegwu states in his declaration that he consented to a search of his apartment (Maduegbuna Decl., Ex. 2, Nzegwu Decl. ¶ 17), the actual affidavit he signed only authorizes a search of computer and electronic equipment (Soloveichik Decl., Ex. H, Consent to Search).

At Nzegwu's May 15, 2009 arraignment, Nzegwu appeared with counsel before Judge Lopez at the Criminal Court in Queens County. (Friedman R. 56.1 ¶ 135; Soloveichik Decl., Ex. M, Arraignment Tr.) According to the Criminal Court Complaint, which was sworn out by Friedman, Nzegwu was charged with, inter alia, Grand Larceny in the Second Degree. (Soloveichik Decl., Ex. Q, Criminal Court Complaint.) At the arraignment, Nzegwu's counsel stated that he had with him two ATM photographs that supposedly resembled his client, that the putative resemblance was one basis for his client's arrest, and that "[u]pon information and belief, the photographs don't look like my client." (Friedman R. 56.1 ¶ 136; Freidman Pl.'s R. 56.1 ¶ 136; Soloveichik Decl., Ex. M, Arraignment Tr. at 3.) Comparing Nzegwu to the ATM photographs only, Judge Lopez stated, "It looks like a pretty good match." (Soloveichik Decl., Ex. M, Arraignment Tr. at 3.) Judge Lopez also noted on the record that he was the judge who had reviewed and signed the search warrant to authorize the search of Nzegwu's apartment and was familiar with the contents of the search warrant application. (Id. at 2.) He then set bail at $100,000, as requested by the ADA. (Id. at 2, 4.) Because Nzegwu could not meet the bail conditions, he remained in custody until he was released on September 8, 2009. (Friedman R. 56.1 ¶¶ 140-41.)

The investigation continued following Nzegwu's arraignment. The computer seized during the search of Nzegwu's apartment was examined, revealing that the computer was not equipped to access wireless internet and did not contain any data linking Nzegwu to the online fraudulent activity. (Friedman R. 56.1 ¶ 153; Pl.'s Friedman R. 56.1 ¶¶ 143, 153.) Friedman and/or Jackson, moreover, requested bank records that indicated that the telephone number of the seized cellphone was not one of the phone numbers associated with the fraudulent activity. (Pl.'s

Friedman R. 56.1 ¶ 143.)[7] In addition, on July 29, 2009, Nzegwu's counsel submitted a letter to

the ADA indicating that Friedman had incorrectly determined the location of one of the

fraudulent IP addresses, and that the IP address was, according to an internet search, in fact

assigned to a geographic location several blocks away from Nzegwu's apartment. (Id.)

On December 15, 2009, the ADA presented the case to the grand jury. (Friedman R.

56.1 ¶ 142.) The Grand Jury did not return a true bill. (City's R. 56.1 ¶ 25; Friedman R. 56.1 ¶

142.) Nzegwu claims that sometime after he was released from custody Friedman apologized to

him. (Maduegbuna Decl., Ex. 7, Nzegwu Dep. at 85; OA Tr. at 19:5-9.)

## II. Procedural History

On November 30, 2009, Nzegwu filed a notice of claim, listing as the nature of the claim

"false arrest, false imprisonment, malicious prosecution, assault and battery, humiliation,

menacing and violation of civil right by employees and/or police officers of the" NYPD.

(McCann Decl., Ex. C, Notice of Claim.) A 50-H hearing was held on June 3, 2010.

(Maduegbuna Decl., Ex. 1, 50-H Hearing Tr.)

Nzegwu commenced the instant action on June 29, 2010. (DE #1.) On October 28,

2010, Nzegwu voluntarily withdrew his complaint against the United States, Friedman, and the

Secret Service. (DE #10.) The complaint was then amended on November 23, 2010, and again

on March 25, 2011. (DE #14; DE #23.) On July 5, 2011, Nzegwu amended his complaint a

third time, this time adding back the United States, the Secret Service, and Friedman as

defendants. (DE #28.) All Bivens claims against Friedman were withdrawn except for those

---

[7] Nzegwu disputes that either Friedman or Jackson forwarded to the ADA the results of the computer examination or the bank records containing the telephone numbers connected to the fraud. (See Friedman R. 56.1 ¶ 153; Pl.'s Friedman R. 56.1 ¶¶ 143, 153.) However, he points to no evidence, and the record contains the sworn affidavit of Friedman stating that he shared the information with the ADA and the NPYD. (Soloveichik Decl., Ex. Y., Friedman Decl.) The Court will treat defendant's claim that he shared the information as undisputed. See Irizarry v. Catsimatidis, 722 F.3d 99, 103 n.2 (2d Cir. 2013) (The non-moving party cannot rest merely on speculations, conjecture or denials but "must set forth facts showing that there is a genuine issue for trial.").

9

under the Fourth Amendment.[8] (DE dated 11/10/2011; DE #36.) On January 27, 2012, the United States moved to dismiss Nzegwu's FTCA claims for lack of jurisdiction, a motion the Court granted for the reasons stated on the record. (DE #44.) Proceeding pro se, Nzegwu filed a notice of an interlocutory appeal on February 27, 2012, which was withdrawn and subsequently dismissed on July 9, 2012. (DE #46, #48, #54.)

The case proceeded and at a conference before Magistrate Judge Levy, on February 14, 2011, a discovery deadline of August 1, 2011 was set. (DE dated 02/14/2011.) On May 17, 2012, Magistrate Judge Levy set a July 16, 2012 deadline for targeted discovery for the limited purpose of qualified immunity. (DE dated 05/17/2012.) Nzegwu's current attorney filed a notice of appearance on June 12, 2012, and requested an extension of time to complete the qualified immunity discovery. (DE #52, #53.) Magistrate Judge Levy granted an extension until August 15, 2012. (DE dated 06/28/2012.) Nzegwu then requested a second extension of time to complete discovery, requesting a new deadline of September 17, 2012. (DE #56.) Magistrate Judge Levy granted this request as well. (DE dated 08/14/2012.) Despite the two previous extensions, on September 7, 2012, Nzegwu again requested an extension, this time until October 26, 2012. (DE #58.) Magistrate Judge Levy denied the extension, but allowed Nzegwu until September 26, 2012 to complete discovery. (DE dated 09/07/2012.)

Magistrate Judge Levy, when setting the initial date of completion for the qualified immunity targeted discovery, also decided that Nzegwu could not depose Friedman. (DE dated 05/17/2012.) On September 7, 2012 Nzegwu's new counsel filed a motion to compel Friedman to appear for a deposition (DE # 29), which Magistrate Judge Levy denied on September 27,

---

[8] Bivens claims under Ninth and Fourteenth Amendments were withdrawn at a November 10, 2011 premotion conference. Plaintiff's Bivens claim under the Fifth Amendment was withdrawn by stipulation. (DE # 35.) Plaintiff's Federal Tort Claims Act ("FTCA") claim for intentional infliction of emotional distress was explicitly withdrawn at the November 10 premotion conference.

2012, with leave to move to reopen discovery upon a proper showing after the filing of a motion for summary judgment on qualified immunity grounds (DE dated 9/27/2012).

After a number of extensions, defendants' motions to dismiss, or in the alternative, for summary judgment were fully briefed on July 15, 2013. For the following reasons, the Court dismisses all claims against defendants and correspondingly denies Nzegwu's motions to stay consideration and to amend the complaint for a fourth time.

## DISCUSSION

### III. Defendants' Motions to Dismiss or, In the Alternative, for Summary Judgment

The parties have conducted limited discovery, and have submitted documents to the Court that the Court cannot properly consider on a motion to dismiss. Having reviewed the additional factual submissions this Court grants summary judgment as to all claims against defendants, except Nzegwu's Monell claim, which the Court dismisses on the pleadings.

#### A. Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008). The Court's function is not to resolve disputed issues of fact but only to determine "whether there is a genuine issue for trial." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The reviewing court, moreover, is required to view the evidence in the light most favorable to the non-moving party and to resolve all reasonable

inferences and ambiguities against the moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Salvino, 542 F.3d at 309. Nevertheless, the non-moving party cannot rest on mere allegations, speculations or denials. See Fed. R. Civ. P. 56(e); see also Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). "Instead, the non-movant must produce specific facts indicating that a genuine factual issue exists." Scotto, 145 F.3d at 114 (internal quotation marks omitted).

## B. Qualified Immunity

Friedman and Jackson argue that they are entitled to qualified immunity on each of Nzegwu's claims against them.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant invokes the doctrine of qualified immunity, courts engage in a two-part inquiry: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right," and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds by Pearson, 555 U.S. at 236; see also Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010). A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Okin v. Vill. of Cornwall-On-Hudson Police Dept., 577 F.3d 415, 433 (2d Cir. 2009) (quoting Saucier, 533 U.S. at 202).

12

### *1. False Arrest Claim*

A claim for false arrest brought under <u>Bivens</u>, § 1983, or New York law requires proof that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." <u>Jocks v. Tavernier</u>, 316 F.3d 128, 134-35 (2d Cir. 2003). The confinement is "otherwise privileged" if probable cause exists at the time of the arrest. <u>Id.</u> at 135; <u>Henning v. City of New York</u>, No. 09-CV-3998, 2012 WL 2700505, at *4 (E.D.N.Y. July 5, 2012). The existence of probable cause, therefore, "is an absolute defense to a false arrest claim." <u>Jaegly v. Couch</u>, 439 F.3d 149, 152 (2d Cir. 2006); <u>Evans v. Solomon</u>, 681 F. Supp. 2d 233, 241 (E.D.N.Y. 2010). In the context of a qualified immunity defense, "the defending officer need only show 'arguable' probable cause." <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 162 (2d Cir. 2002).

Defendants Friedman and Jackson both argue that they are entitled to qualified immunity on this claim because there was probable cause or, at minimum, arguable probable cause for Nzegwu's arrest.

### a) Arguable Probable Cause and False Arrest

Probable cause requires an officer to have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." <u>Martinez v. Simonetti</u>, 202 F.3d 625, 634 (2d Cir. 2000) (internal quotation marks omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152 (2004); <u>accord Ricciuti v. New York City Transit Authority</u>, 124 F.3d 123, 128 (2d Cir. 1997). Probable cause is to be analyzed from an

objective perspective. Jaegly, 439 F.3d at 153. Therefore, the state of mind of the arresting officer is irrelevant to the probable cause determination; "[t]hat is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck, 543 U.S. at 153; see Jaegly, 439 F.3d at 153 (noting that the Supreme Court has "rejected the view that probable cause to arrest must be predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer"). The evidence in support of the existence of probable cause must be viewed in its totality; each piece of evidence contributes to a finding of probable cause, even if that piece of evidence viewed individually fails to establish probable cause. See Stansbury v. Wertman, 721 F.3d 84, 92-95 (2d Cir. 2013). Just as inculpatory evidence must be weighed, contemporaneous exculpatory evidence must also be considered when determining the existence of probable cause. See Fabrikant v. French, 691 F.3d 193, 214 (2d Cir. 2012).

An officer asserting qualified immunity need only demonstrate the existence of arguable probable cause. Zalaski v. City of Hartford, 723 F.3d 382, 390 (2d Cir. 2013). "'Arguable probable cause exists, if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Id. (citing Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)). "Therefore, in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity." Caldarola, 298 F.3d at 162.

b) Friedman's Arguable Probable Cause

The evidence in the record establishes, at minimum, that officers of reasonable competence faced with the facts known to Friedman at the time of the arrest could disagree on

14

whether probable cause to arrest Nzegwu existed. Friedman relied on three principle pieces of evidence in concluding that he had probable cause to arrest Nzegwu: (1) Griffiths' identification of Nzegwu as the individual pictured in the Wachovia ATM photograph; (2) Friedman and his fellow officers' identifications of Nzegwu as the individual pictured in the Wachovia ATM photographs; and (3) the presence, in front of Nzegwu's apartment, of unsecured wireless signals associated with the IP addresses used to perpetrate the fraud. (Def. Friedman Mem. at 6-10.) Friedman also notes that Judge Lopez independently concluded that probable cause existed, which further supports finding Friedman had arguable probable cause to arrest Nzegwu. (Id. at 11-12.) Nzegwu, in turn, argues that the evidence on which Friedman relies does not support arguable probable cause, and that Friedman ignored exculpatory evidence which defeats the possibility of finding arguable probable cause. (Pl. Friedman Opp. at 9-17.)

      i.     Griffiths' Identification

Probable cause to arrest a suspect exists where a law enforcement officer received information from an eyewitness "unless the circumstances raise doubt as to the person's veracity." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006). Information provided by a bystander "with no apparent motive" to provide false information has "a peculiar likelihood of accuracy." Caldarola, 298 F.3d at 163 (internal quotations omitted). An expression of uncertainty while making an identification does not render an identification non-probative of probable cause. Seitz v. DeQuarto, 777 F. Supp. 2d 492, 502 n.8 (S.D.N.Y. 2011) (relying in part on a witnesses identification of a suspect even though the witness remarked that he could not tell if the mustache in the photograph of the suspect was fake or real). Still, for an identification of a suspect to support probable cause the identification must be based on common

15

characteristics beyond the fact that both are male and black. See Jenkins v. City of New York, 478 F.3d 76, 89 (2d Cir. 2007).

In this case, Friedman asked the building's superintendent, an independent bystander with no apparent motive to lie, whether he recognized the man pictured in the Wachovia ATM photographs. Griffiths had the opportunity to review the photographs and independently conclude whether they resembled anyone living in the apartment building. Griffiths identified Nzegwu as the man in the ATM photograph, regardless of whether Griffiths stated that the person in the ATM photographs was definitely the man living in Apartment E5, or simply that he thought he was the man living in Apartment E5. The record does not indicate that Friedman did anything that would have suggested this identification to Griffiths,[9] or that Griffiths simply concluded that Nzegwu resembled the individual in the photograph because both were black. To the extent a dispute exists, it is only over the certainty with which Griffiths made the identification.

 ii. Officer Identification

Even if insufficient on its own to establish probable cause, an officer's determination that a suspect resembles an individual caught on surveillance video **"contribute[s] meaningfully to** [an officer's] probable cause to arrest [a suspect]." Stansbury, 721 F.3d at 90 (emphasis in original). A contemporaneous comparison between the photo and the individual is not required before the identification can support probable cause. See id. at 88, 90 (finding the fact that an officer "recognized [the suspect] as the perpetrator he had seen on the videotape" probative to

---

[9] At Oral Argument plaintiff's counsel noted that the officers, after Griffiths identified the individual in the Wachovia ATM photo as Nzegwu, told Griffiths that they already knew where to find Nzegwu. (OA Tr. 20.) Nzegwu contends that this supports an argument that the police officers suggested that Nzegwu was the individual in the Wachovia ATM photograph. (Id.) Plaintiff does not argue, and no evidence supports the conclusion, that the officers said anything suggestive prior to the identification. (Id.) Nor does this Court think the fact that the officers knew where to find Nzegwu supports finding that they said or did anything that suggested an identification of Nzegwu as the individual in the photograph.

the determination that probable cause existed) (internal quotation marks omitted). Friedman and a fellow officer identified Nzegwu as the individual in the Wachovia ATM photographs. These identifications support finding arguable probable cause existed. See id. at 94.

      iii.    Circumstantial Evidence

Strong circumstantial evidence also supports the existence of arguable probable cause. Circumstantial evidence that "properly narrowed" an officer's "investigation to the universe of people who may have" committed the crime is "undoubtedly relevant to assessing [an officer's] probable cause determination." Stansbury, 721 F.3d at 91-92. No one disputes that the person in the Wachovia ATM photographs is a single individual involved in fraudulent activity. (Third Amended Complaint ("TAC") ¶¶ 38, 54.) Friedman subpoenaed the ISP and obtained the physical locations associated with the IP addresses identified as having been used to conduct the online fraudulent activity. (Friedman R. 56.1 ¶¶ 79, 82-83.) He investigated whether any individuals residing in the geographical locations linked to the IP addresses provided by the ISP looked like the individual pictured in the Wachovia ATM photographs. (Id. ¶¶ 91-98.) Because no one in the apartments associated with the IP addresses matched the person in the ATM photographs (id. ¶¶ 94, 106), and given the strong, unsecured wireless signal accessible outside of the apartments associated with each IP address (id. ¶¶ 91-93, 109), as well as the confirmed presence of at least two of the signals in the vicinity of Nzegwu's apartment (id. ¶¶ 110-14), it was reasonable for Friedman to conclude that the individual perpetrating the fraud lived in the vicinity of the wireless signals. This circumstantial evidence narrows the universe of suspects and supports finding arguable probable cause when coupled with both Griffiths' and the officers' identifications of Nzegwu as the man in the Wachovia ATM photograph.

iv.     Judge Lopez's Identification

Judge Lopez's conclusion that Nzegwu was the individual depicted in the Wachovia ATM photographs also supports the existence of arguable probable cause. In New York State, a warrantless arrest requires a "prompt judicial determination of probable cause." Cruz v. Reiner, No. 11-cv-2131, 2011 WL 6204101, at *3 (E.D.N.Y. Dec. 12, 2011); Bryant v. City of New York, 404 F.3d 128, 137 (2d Cir. 2005). An independent judge's determination that probable cause existed "strongly suggests that [defendants] were objectively reasonable in their belief that probable cause existed to arrest [the plaintiff]." Seitz, 777 F. Supp. 2d at 503. At Nzegwu's May 15, 2009 arraignment, Judge Lopez reviewed two Wachovia ATM photographs and compared those pictures to Nzegwu, concluding "[i]t looks like a pretty good match." (Maduegbuna Decl., Ex. 18, Arraignment Tr. at 3.) [10]

Here, Judge Lopez's conclusion that Nzegwu resembled the individual pictured in the Wachovia ATM photos, and reliance on that conclusion in determining the existence of probable cause, further supports finding that Friedman had arguable probable cause to arrest Nzegwu.

v.      Exculpatory Evidence

When determining whether the totality of evidence supports finding arguable probable cause, the inculpatory evidence must be viewed alongside the exculpatory evidence. Fabrikant, 691 F.3d at 214. Nzegwu argues that probable cause could not exist because defendants ignored

---

[10] Plaintiff argues that Judge Lopez's decision not to dismiss the case at arraignment was due to Friedman's deliberate withholding of information in his affidavit in support of the search warrant and falsely swearing to information in the criminal complaint. The purportedly "withheld" info was: (1) the supposed fact that Griffiths' identification of the plaintiff was equivocal, (2) that there was no positive identification to support Friedman's averment that Nzegwu matched the person depicted in the ATM photos, and (3) that Friedman possessed a DMV photo of Nzegwu. Plaintiff further contends that the criminal complaint falsely alleged that a Wachovia Bank employee's investigation identified Nzegwu as the individual in the Wachovia ATM photographs and that the wireless activity associated with one of the IP addresses used to commit the fraud originated from plaintiff's residence. (Pl. Friedman Opp. at 8-9, 15-16; Maduegbuna Decl., Ex. 4, Search Warrant Affidavit, Ex. 5, Criminal Compl.) However, Judge Lopez relied on his own comparison of Nzegwu to the ATM photos in concluding that Nzegwu was the individual photographed in the Wachovia ATM pictures and, as discussed below, the "withheld" information is largely irrelevant.

the exculpatory evidence that plaintiff repeatedly protested his innocence, and that the officers possessed Nzegwu's DMV photo but failed to compare it with the Wachovia ATM photograph. This evidence fails to call into question the existence of probable cause. [11]

In determining whether arguable probable cause existed the Court examines only the evidence that the officer relied on, "not every theoretically plausible piece of exculpatory evidence or claim of innocence that might have existed." Crowley, 460 F.3d at 398 (citing Caldarola, 298 F.3d at 168.) Friedman had the opportunity to view Nzegwu in person and determine whether he resembled the individual in the ATM photograph. He had no need to rely on Nzegwu's DMV photograph, which undoubtedly was not a more accurate depiction of Nzegwu. Thus, the allegedly exculpatory evidence was, in fact, either not exculpatory or not relevant to Friedman's determination that probable cause existed. [12]

Viewing all the exculpatory and inculpatory evidence together, this Court concludes that arguable probable cause existed. Two agents, a bystander with no incentive to lie, and a judge identified the Nzegwu as the individual depicted in the Wachovia ATM photographs, strong circumstantial evidence narrowed the universe of suspects that had the opportunity to commit the

---

[11] Nzegwu also argues that a Black officer present at the time of Nzegwu's arrest asked who the individual was photographed in a picture sitting on Nzegwu's dresser. According to Nzegwu, the Black officer looked at a picture on the closet door and asked "who is that." Nzegwu answered "that's me." The officer then looked at the picture and looked at Nzegwu. (Maduegbuna Decl., Ex. 7, Nzegwu Dep. at 26:10-16.) Although plaintiff argues this is evidence that the Black officer did not think Nzegwu was the individual in the Wachovia ATM photo, this Court cannot read the evidence as supporting Nzegwu's claim. The officer did not comment on the ATM photo, but asked about a completely unrelated photo. Further, the officer was not alleged to have said anything in response to Nzegwu's comment that he was the individual in the photograph. Even read in the light most favorable to plaintiff, the fact that a Black officer looked at a photograph of the suspect and asked who the photograph depicted bears no relation to the question of whether it was reasonable to conclude that Nzegwu looked like the individual depicted in the ATM photograph. Similarly, plaintiff claims as exculpatory the fact that an officer told Nzegwu to bring his MetroCard with him to the station and Friedman said that one would be provided at the station. (OA Tr. 27-28.) This conversation cannot support the conclusion that any officer thought Nzegwu was innocent and in no way is exculpatory. (OA Tr. 28:19-29:4.)

[12] Nzegwu argues that when he protested at the precinct that he did not look like the individual in the ATM photos, Friedman stated "it doesn't matter . . . you are black and you are Nigerian and all of you are thieves." (Maduegbuna Decl., Ex. 7, Nzegwu Dep. at 48:4-14.) Even if true, this goes to state of mind, which is irrelevant to the probable cause analysis.

19

crime to a specific geographic area, and the suspect identified by the bystander and agents lived within that geographic area. See Stansbury, 721 F.3d at 90-92. The determination that at least arguable probable existed is reinforced by the fact that Judge Lopez also compared Nzegwu to the ATM photos, stated that "[i]t looks like a pretty good match," did not dismiss the case, and set bail at $100,000. (Maduegbuna Decl., Ex. 18, Arraignment Tr. at 3.)

### c) Jackson's Arguable Probable Cause

Jackson argues that if Friedman's investigation was sufficient to create probable cause for Friedman, it was also sufficient to create probable cause for Jackson under the collective knowledge doctrine. (Def. City Mem. at 6-7.)

The collective knowledge doctrine provides that an arrest may be proper even if the actual arresting officer "'lacks the specific information to form the basis for probable cause'" so long as "'sufficient information to justify the arrest . . . was known by other law enforcement officials initiating or involved with the investigation.'" United States v. Feliz, 657 F. Supp. 2d 364, 372 (E.D.N.Y. 2009) (citing United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001)). So long as the arresting officer has some communication with the officer possessing the information sufficient to support probable cause, probable cause will be imputed to the arresting officer. Wong v. Yoo, 649 F. Supp. 2d 34, 60 n.11 (E.D.N.Y. 2009). Prior to arresting Nzegwu, Friedman informed Jackson of the information he had learned from his investigation. (Friedman R. 56.1 ¶¶ 119-20; City R. 56.1 ¶ 10.) This Court finds that Jackson had arguable probable cause to arrest Nzegwu under the collective knowledge doctrine. Accordingly it dismisses the false arrest claim against Jackson.

### 2. *Malicious Prosecution Claim against Friedman and Jackson*

Both Jackson and Friedman argue that they are also entitled to qualified immunity on Nzegwu's malicious prosecution claims against them.[13]

Malicious prosecution claims brought under <u>Bivens</u> and § 1983 are generally analyzed under the same principles. <u>Tavarez v. Reno</u>, 54 F.3d 109, 109-10 (2d Cir. 1995); see <u>Williams v. Young</u>, 769 F. Supp. 2d 594, 603 (S.D.N.Y. 2011); <u>Davis v. United States</u>, 430 F. Supp. 2d 67, 78-79 (D. Conn. 2006). Whether brought under <u>Bivens</u> or § 1983, a claim for malicious prosecution requires proof of four elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceedings in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." <u>Manganiello v. City of New York</u>, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal quotation marks omitted); <u>Williams</u>, 769 F. Supp. 2d at 603.

As with a false arrest claim, "'the existence of probable cause is a complete defense to a claim of malicious prosecution.'" <u>Stansbury</u>, 721 F.3d at 94-95 (quoting <u>Savino v. City of New York</u>, 331 F.3d 63, 72 (2d Cir. 2003)). However, the probable cause standard in a malicious prosecution is "slightly higher than the standard for false arrest cases" and requires "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." <u>Id.</u> at 95. When asserting a defense of qualified immunity a plaintiff must only demonstrate the existence of arguable probable cause. <u>Jean v. Montina</u>, 412 F. App'x. 352, 354 (2d Cir. 2011). In a malicious prosecution claim, the existence of arguable probable cause "is measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the

---

[13] Because the Court finds that Friedman and Jackson are entitled to qualified immunity for the malicious prosecution claims, the Court does not address defendants' alternative grounds for dismissing these claims, namely that the Third Amended Complaint did not provide sufficient notice that Nzegwu was asserting a malicious prosecution claim against Friedman, that neither defendant initiated or continued the prosecution against Nzegwu, and that neither defendant acted with malice.

preceding warrantless arrest." Mejia v. City of New York, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000). When a court determines that there was probable cause at the time of the arrest, there can be no claim for malicious prosecution "in the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest." Johnson v. City of Mount Vernon, No. 10-CV-70006, 2012 WL 446618, at *5 (S.D.N.Y. Sept. 18, 2012) (citing Rodriguez v. City of New York, No. 08-CV-04173, 2012 WL 1059415, at *11 (E.D.N.Y. Mar. 28, 2012)).

As a threshold matter, it is not clear that the complaint states a claim of malicious prosecution against Friedman, and indeed, Nzegwu admits that "there is no stated Count in the Third Amended Complaint" for malicious prosecution. (Pl. Friedman Opp. at 22.) However, assuming the complaint states a claim for malicious prosecution against Agent Friedman, as well as against Agent Jackson, both officers are entitled to qualified immunity, even under the slightly higher probable cause standard. Nzegwu was arrested on May 14, 2009 (Def. R. 56.1 ¶¶ 123, 127) and was arraigned the next day on May 15, 2009 (Def. R. 56.1 ¶ 135). Arguable probable cause to arrest Nzegwu existed on May 14 and defendant points to no evidence that came to light between Nzegwu's May 14 arrest and the May 15 arraignment that would have vitiated the existence of arguable probable cause.

In arguing that probable cause did not exist, Nzegwu points to two pieces of post-arrest allegedly exculpatory evidence. First, Nzegwu argues that an examination of his computer, which was seized pursuant to a March 14 search, indicated that the computer did not have wireless capabilities. (Pl. Friedman Opp. at 24-25.) Second, Nzegwu asserts that Friedman and/or Jackson requested the bank's Automatic Number Identification ("ANI") records which

22

showed that his telephone was not used to engage in the alleged fraudulent activity. (Id. at 25.) Nothing in the record supports concluding that either of these additional pieces of evidence came to light after Nzegwu's arrest but before his arraignment. Additionally, when listing evidence withheld from the defendants' May 15 criminal complaint, Nzegwu does not list defendant's alleged failure to disclose the results of the computer examination or the ANI records. (Pl. Friedman Opp. at 24; Pl. City Opp. at 15-16.) Elsewhere, Nzegwu asserts that defendant Friedman received the results of his computer examination eight days after Nzegwu's arrest (Pl. City Opp. at 18) and presumably did not know of the ANI records at the time of the arrest (Pl. Friedman Opp. at 24). Nzegwu does not claim, and nothing in the record supports concluding that defendants possessed this allegedly exculpatory evidence at the time of Nzegwu's arraignment.[14]

Accordingly, this Court finds that arguable probable cause existed to initiate the prosecution. Since arguable probable cause existed at the time of the arraignment, Nzegwu cannot state a claim for malicious prosecution.

### 3. Excessive Detention Claim against Friedman

Friedman argues, and this Court finds, that he is entitled to qualified immunity as to Nzegwu's excessive detention claim.[15]

---

[14] Nzegwu appears to argue that the computer examination and ANI records support his malicious prosecution claim even if the officers only received the results after Nzegwu's arraignment. This argument fails because the newly discovered information was not clearly exculpatory and was not withheld from the prosecutor. See Kinzer v. Jackson, 316 F.3d 139, 143-144 (2d Cir. 2003) (declining to decide whether a malicious prosecution claim could be brought against an officer who allegedly received and withheld exculpatory information after the criminal proceedings commenced and the prosecutor took control of the case because the undisputed record indicated that the officer shared the allegedly withheld information with the prosecutor); Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996) ("In order for probable cause to dissipate the groundless nature of the charges must be made apparent by the discovery of some intervening fact.").

[15] Because this Court finds that Friedman is entitled to qualified immunity, it does not address his argument that he did not control plaintiff's post-arrest detention.

To prevail on a claim of excessive detention, a plaintiff must demonstrate "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" Russo v. City of Bridgeport, 479 F.3d 196, 205 (2d Cir. 2007). Although "shocks the conscience" is a standard most often employed in a Fifth Amendment context, the Second Circuit has employed that standard in this Fourth Amendment context. Id.; Jones v. City of New York, --- F. Supp. 2d ---, 2013 WL 6814796 (E.D.N.Y. Dec. 20, 2013) (noting that the Second Circuit recognized a Fourth Amendment right not to be excessively detained and required a showing of conduct that shocks the conscience when asserting a violation of that Fourth Amendment right); see also Southerland v. City of New York, 680 F.3d 127, 160 (2d Cir. 2011) (discussing Russo and noting that "[t]here we made clear the constitutional right to be free from prolonged detention . . . was a species of the right to be free from unlawful seizure under the Fourth Amendment" and that it was "of no consequence" which amendment served as the source of that right (internal quotation marks omitted)); Wilson v. City of New York, 480 F. App'x. 592, 595 (2d Cir. 2012) (distinguishing Russo). The Court articulated three factors that guide the determination of whether a plaintiff was excessively detained in violation of the Fourth Amendment. The relevant factors are: (1) the length of time the plaintiff was incarcerated; (2) the ease with which the exculpatory evidence in the defendant officers' possession could have been checked; and (3) the alleged intentionality of the defendants' behavior. See Russo, 479 F.3d at 209-10; Nelson v. Hernandez, 524 F. Supp. 2d 212, 220 (E.D.N.Y. 2007). A defendant is entitled to qualified immunity if it was "objectively reasonable for the defendant to believe that his action did not violate the law." Russo, 479 F.3d at 211.

Nzegwu argues that Friedman failed to disclose the existence of his DMV and booking photo, which, if viewed, would clearly have demonstrated his innocence. (Pl. Friedman Opp. at 20.) In addition, Nzegwu argues that Friedman uncovered information about his computer that was clearly exculpatory, but nevertheless continued to detain him. (Id. at 20-21.) Nzegwu also attempts to rest his claim on Friedman's failure to investigate the street address linked to one of the IP addresses used to commit the fraud as well as the failure to compare the ANI results with Nzegwu's seized cell phone. Id. Finally, Nzegwu argues that Friedman never disclosed that he lied about Griffiths' identification. Id.

None of these claims support finding behavior that shocks the conscience. In Russo the officers hid the only copy of a video surveillance tape that depicted a robber without any tattoos. Russo, who the police arrested, had arms covered with distinctive tattoos. The police ignored this evidence, and in fact lied about its contents, despite Russo's pleas that they review the video which he claimed would demonstrate his innocence. The Court found that that the hidden evidence would have clearly demonstrated Russo's innocence and that the officers' conduct shocked the conscience because (1) the officers possessed the sole copy of clearly exculpatory evidence, (2) the officers placed that evidence in a desk drawer rather than follow police protocol for the storage of exculpatory evidence, and (3) as a result of the officers' hiding of the exculpatory evidence the defendant and the prosecutor did not receive the hidden exculpatory evidence for a period of several months. Russo, 479 F.3d at 208; Wilson, 480 F. App'x. at 595. In contrast, where the evidence ignored is only arguably exculpatory, the conduct does not shock the conscience. See Wilson, 480 F. App'x. at 595 (distinguishing Russo because, while the evidence in Wilson was conflicting, some of it identified the defendant as an accomplice to the charged crime); Hernandez, 524 F. Supp. 2d at 225 (holding that an officer's conduct did not

shock the conscience despite allegedly ignoring a video because the defendant admitted that his attorney was unable to determine whether the video depicted the defendant and was therefore not exculpatory).

Here, all the evidence on which Nzegwu's claim rests was either not in the exclusive possession of Friedman, was not exculpatory, or was both not in the exclusive possession of Friedman and not exculpatory. As discussed above, the DMV and booking photos were not exculpatory and Friedman was not in sole possession of this evidence. The prosecutor was free to conduct an in person comparison between the Wachovia ATM pictures and Nzegwu and arrive at an independent determination as to whether Nzegwu was the individual in the Wachovia ATM photos.

The fact that Nzegwu's computer did not have wireless internet capability also does not support Nzegwu's claim. Friedman was not in the sole possession of this information as Nzegwu could have informed the prosecutor that his computer could not access wireless internet. Further, there is uncontradicted evidence that Friedman shared the information he received about Nzegwu's computer with the prosecutor. (Friedman R. 56.1 ¶ 153.)[16] Additionally, this information was not clearly exculpatory as Nzegwu could have used a different computer to conduct the fraud. For the same reason, the fact that the ANI report did not list Nzegwu's cell phone is not clearly exculpatory. Nzegwu could have used a different cellphone or his involvement in the fraud could not have included making telephone calls.

Friedman's failure to investigate the IP addresses is similarly unavailing. First, the fact that one IP address was associated with another building was information that Nzegwu provided to the DA; this information was not in Friedman's exclusive possession. Second, the ISP,

---

[16] At oral argument Nzegwu contended that no evidence indicated that Friedman shared the information about Nzegwu's computer with the prosecutor. (OA Tr. 15:17-19.) However, in his briefing plaintiff acknowledges Friedman's affidavit stated that he shared the information with the prosecutor. (Pl. Friedman Opp. at 20-21.)

responding to a subpoena, provided Friedman the physical addresses associated with each IP address. Friedman had no reason not to rely in the information the ISP provided. Third, the physical location associated with each IP address is not dispositive. Because Friedman thought the fraud was taking place using an unsecured wireless connection, the physical address associated with the IP address was not dispositive so long as the signal from the relevant IP address could be accessed wirelessly from Nzegwu's apartment.

Finally, Nzegwu's assertions about Friedman's representations about Griffiths' identification cannot support his excessive detention claim since Griffiths was not in Friedman's exclusive possession. In addition, when Nzegwu contacted Griffiths, Griffiths confirmed that he identified Nzegwu as the individual in the Wachovia ATM photos.

Although Nzegwu has "a clearly-established constitutional right to be free from prolonged detention caused by law enforcement officials' mishandling or suppression of exculpatory evidence in a manner which 'shocks the conscience,'" Russo, 479 F.3d at 211-212, Nzegwu has not demonstrated that it was objectively unreasonable for Friedman to believe that his behavior complied with the law. Friedman is therefore entitled to qualified immunity on Nzegwu's excessive detention claim.

### 4.  *State Law Claims*

#### a)  False Arrest and Malicious Prosecution

Officer Jackson is entitled to qualified immunity on Nzegwu's false arrest and malicious prosecution claims.[17] Although qualified immunity protects an official from liability under federal causes of action and "is not generally understood to protect officials from claims based on state law . . . a similar doctrine exists under New York common-law." Jenkins, 478 F.3d at

---

[17] Because this Court finds that Office Jackson is entitled to qualified immunity, it does not address whether plaintiff complied with the conditions precedent to a suit under New York State law. (Def. City Mem. at 11, 18.) Nor does it address whether Detective Jackson initiated or continued plaintiff's prosecution. (Def. City Mem. at 13.)

86. "New York law . . . grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis." Jones v. Parmley, 465 F.3d 46, 63 (2d Cir. 2006). Where, as here, a defendant is entitled to qualified immunity under federal law, summary judgment is similarly appropriate on Nzegwu's state law false arrest and malicious prosecution claims. See Jenkins, 478 F.3d at 88 ("If the detective defendants were entitled to qualified immunity under federal law, summary judgment would be similarly appropriate on [plaintiff's] state law false arrest claim."); Sankar v. City of New York, 867 F. Supp. 2d 297, 313 (E.D.N.Y. 2012); Johnson v. City of New York, No. 05-cv-7519, 2011 WL 2693234, at * 4 (E.D.N.Y. June 30, 2011) (holding that defendant entitled to summary judgment on federal law malicious prosecution claim because of qualified immunity was also entitled to qualified immunity as to state law malicious prosecution claim). Accordingly, the Court grants the City's motion for summary judgment on Nzegwu's state law false arrest and malicious prosecution claims.

b) Respondeat Superior Liability

Nzegwu argues that the City of New York is vicariously liable for false arrest and malicious prosecution under a theory of respondeat superior. (Pl. City Opp. at 27.) However, this Court dismisses Nzegwu's false arrest and malicious prosecution claims against Jackson. "Because the false arrest and malicious prosecution claims have been dismissed under federal as well as state law, the City cannot be held vicariously liable for either of those torts." Bouche v. City of Mount Vernon, 11-cv-5246, 2013 WL 322613, at *7 (S.D.N.Y. Jan. 28, 2013) (citing Alhovsky v. Ryan, 658 F. Supp. 2d 526, 539 (S.D.N.Y. 2009), aff'd sub nom. Alhovksy v. Paul, 406 F. App'x 535 (2d Cir. 2011)). Accordingly, Nzegwu's respondeat superior claim fails.

## C. Unlawful Search Claim Against Jackson

Jackson contends that Nzegwu's unlawful search claim is meritless as the search of his person was a valid search incident to a lawful arrest, and the search of his apartment was pursuant to a validly issued search warrant. (Def. City Mem. at 18-19.) Nzegwu does not dispute the search incident to arrest. He contends that the search warrant was invalid because the officers intentionally misled the criminal court by omitting exculpatory evidence and submitting outright falsities to the court. (Pl. City Opp. at 22.)

Jackson's search was conducted pursuant to a validly issued search warrant.[18] A search warrant that has been issued by a neutral magistrate is presumptively valid. Franks v. Delaware, 438 U.S. 154, 171 (1978); United States v. Ortiz, 499 F. Supp. 2d 224, 228 (E.D.N.Y. 2007). "A plaintiff who argues that a [search] warrant was issued on less than probable cause faces a heavy burden." Rivera v. United States, 928 F.2d 592, 602 (2d Cir.1991). That burden is satisfied where plaintiff "makes a substantial preliminary showing" that a warrant's supporting affidavit contained (1) deliberately false statements, or statements made with a reckless disregard for the truth, and (2) those false statements were necessary to support a finding of probable cause. Fabrikant, 691 F.3d at 214; United States v. Serrano, 937 F. Supp. 2d 366, 372 (E.D.N.Y. 2013) (citing Franks, 438 U.S. at 156). False information included in an affidavit is not necessary to support a finding of probable cause if probable cause existed even excluding the deliberately or recklessly false statements. Serrano, 937 F. Supp. 2d at 372 (citing United States v. Martin, 426 F.3d 68, 73-74 (2d Cir. 2005)).

---

[18] Nzegwu also argues that although he consented to the search, the consent was only given to the Secret Service, and only covered his computer and electronic equipment. (Pl. City Opp. at 23.) The Court notes that in his declaration, Nzegwu stated that he consented to a search of his apartment and computer equipment. (Maduegbuna Decl., Ex. 2, Nzegwu Decl. ¶ 17.) However, Nzegwu's signed consent was narrower in scope than the search warrant, covering only searches of computer equipment (Soloveichik Decl., Ex. H, Consent to Search), while the search warrant also covered financial papers (id. at Ex. G, Search Warrant). Because this Court finds that the search warrant was validly issued it does not need to decide whether Nzegwu's consent would have rendered the search legal.

The affidavit in support of the search warrant asserts that Griffiths identified Nzegwu as the individual in the Wachovia ATM photograph. (Maduegbuna Decl., Ex. 4, Search Warrant Affidavit.) This is a true and accurate statement, even under Nzegwu's account of Griffiths' comments. The affidavit thruthfully stated that Friedman observed Nzegwu and concluded that he was the individual pictured in the Wachovia ATM photograph. (Id.) Additionally, Friedman truthfully stated that he was able to access one of the IP addresses used to perpetrate the fraud while standing outside of Nzegwu's apartment and that two other IP addresses associated with the fraudulent conduct were located within Nzegwu's building. (Id.)[19]

The only information Nzegwu argues was false was the claim that Griffith unequivocally identified Nzegwu as the individual in the Wachovia ATM photograph. (Pl. City Opp. at 22-23.) As noted above, the affidavit truthfully averred that Griffiths identified Nzegwu as the individual pictured in the Wachovia photograph; it does not characterize the identification as unequivocal. (Maduegbuna Decl., Ex. 4, Search Warrant Affidavit.)

Nzegwu also argues that the warrant omitted exculpatory information that rendered the affidavit misleading, namely that the officers: (1) possessed a DMV photo of Nzegwu, (2) did not use a photo array when showing Griffiths the Wachovia ATM photo, and (3) did not make a contemporaneous comparison between the Wachovia ATM photograph and Nzegwu before concluding that Nzegwu was the individual depicted in the Wachovia ATM photograph. (Pl. City Opp. at 22-23.) As discussed above, the allegedly exculpatory information was not in fact exculpatory and did not render misleading the statement that Griffiths and the officers identified Nzegwu as the individual in the Wachovia ATM photo. Since the warrant did not contain false

---

[19] Plaintiff later discovered that only one, not two, IP address was located within the building. (Pl.'s Friedman R. 56.1 ¶ 143). There is no evidence, and plaintiff does not argue, that defendant, at that time, had reason to suspect that one of the IP addresses in fact did not belong to Nzegwu's building.

or misleading statements, let alone intentionally or recklessly false statements, Nzegwu's claim against Jackson must fail.

## D. Municipal Liability

In order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal defendant, a so-called <u>Monell</u> claim, a plaintiff must demonstrate the existence of a municpal policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right. <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 403 (1997); <u>City of Springfield v. Kibbe</u>, 480 U.S. 257, 267 (1987). Nzegwu concedes that the complaint does not properly plead a <u>Monell</u> claim. (Pl. City Opp. at 29.) Instead, Nzegwu argues that he is entitled to amend his pleadings to properly assert a <u>Monell</u> claim and conduct further discovery in support of that claim. (<u>Id.</u>) As discussed below, this Court denies Nzegwu's request for leave to amend his complaint. Accordingly, Nzegwu's <u>Monell</u> claim is dismissed on the pleadings.

## E. Motion to Deny as Premature or Hold in Abeyance

Nzegwu argues that defendants' motions should be dismissed, or at least held in abeyance, until he has time to conduct additional discovery. (Pl. Friedman Opp. at 3-5.)[20] "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2)

---

[20] Plaintiff argues that he is entitled to depose Friedman. (Pl. Friedman Opp. at 3-4.) Magistrate Judge Levy initially denied plaintiff's request to depose Friedman. (DE dated 05/17/2012). Plaintiff requested that Magistrate Judge Levy reconsider his denial of plaintiff's request to depose Friedman. (DE # 67 at p. 28, 31.) Magistrate Levy denied the motion to reconsider, but allowed plaintiff to move to reopen discovery, and seek to depose Friedman, following Friedman's motion for summary judgment on the grounds of qualified immunity. <u>Id.</u> To the extent that Nzegwu's current opposition constitutes a motion to reopen discovery, it is denied. This Court finds that plaintiff has failed to establish any genuine issue of material fact that is in dispute with regards to the existence Friedman's qualified immunity defense. <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987) (holding that an officer was entitled to summary judgment on his qualified immunity claim, before any discovery took place, because the undisputed facts show that a reasonable officer, as a matter of law, could have believed that his actions were lawful); <u>see also</u> <u>Forras v. Andros</u>, 470 F. Supp. 2d 283, 293 (S.D.N.Y. 2005) (holding that where there is no genuine issue of material fact summary judgment on the grounds of qualified immunity prior to discovery is proper).

allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). A proper affidavit explains "'(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful.'" Bank of America, N.A. v. Fischer, 927 F. Supp. 2d 15, 27 (E.D.N.Y. 2013) (citing Gualandi v. Adams, 385 F.3d 236, 244 (2d Cir. 2004)). The failure to file an affidavit explaining the need for additional discovery "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 n.1 (2d Cir. 2004) (citing Paddington Partners v. Bourchard, 34 F.3d 1132, 1137 (2d Cir. 1994)).

Nzegwu's request for additional discovery fails because Nzegwu neglected to file an affidavit as required by Rule 56(d). To the extent that the Maduegbuna Declaration can be construed as the Rule 56(d) affidavit, the affidavit "falls woefully short of addressing the necessary criteria for allowing such additional discovery." Fischer, 927 F. Supp. 2d at 27. Nzegwu has not identified any facts that he seeks that could reasonably be expected to create a material issue of fact relating to qualified immunity or the merits of the unlawful search claim. Accordingly, Nzegwu's request that this Court allow additional discovery before granting defendants' motions to dismiss and, in the alternative, for summary judgment is denied.

**IV. Leave to Amend**

Nzegwu seeks leave to amend his complaint. A court should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). However, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the

nonmoving party." Corbett v. Napolitano, 897 F. Supp. 2d 96, 119 (E.D.N.Y. 2012) (citing Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (internal quotation marks omitted)). "[I]t is not an abuse of discretion to deny leave to amend" where "it appears that granting leave to amend is unlikely to be productive." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (denial of amendment due to futility is not an abuse of discretion).

Nzegwu has already amended his complaint three times. When Nzegwu's current attorney was retained, he informed the court that he might seek to amend the complaint before proceeding with discovery. (DE # 53.) Despite requesting three extensions to allow additional time to complete the targeted discovery, Nzegwu did not amend his complaint. Discovery concluded on September 26, 2012. (DE dated 09/07/2012.) Nzegwu, in response to defendants' motions to dismiss and in the alternative for summary judgment, now seeks leave to amend for a fourth time so that the complaint will "reflect the theory of the case [plaintiff] wished to pursue." (Pl. Friedman Opp. at 5.)

To the extent that he seeks to clarify the existence of an excessive detention and malicious prosecution claim against Friedman (Pl. Friedman Opp. at 17, 22) such amendments are futile; this Court assumed those claims were properly pled and determined that Friedman was entitled to qualified immunity on both claims. To the extent Nzegwu seeks to amend the complaint to properly state a Monell claim (Pl. Jackson Opp. at 28), Nzegwu informed the Court that it might seek to amend the complaint prior to the close of discovery but declined to do so. Having failed to amend the complaint at that time, Nzegwu cannot now seek to stave off dismissal by requesting yet another chance to amend his complaint.

## CONCLUSION

For the reasons stated, the Court grants defendants' motions to dismiss, or in the alternative, for summary judgment in their entirety and correspondingly denies Nzegwu's request to deny or stay resolution of the motions pending further discovery. The Court also denies Nzegwu's motion to amend the complaint. The Clerk of Court is directed to terminate all pending motions, close the case, and enter judgment.

SO ORDERED.

Dated: Brooklyn, New York
      March  **3/**  , 2014

s/Carol Bagley Amon

Carol Bagley Amon
Chief United States District Judge